UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JUDSON CLAY PANKEY,

        Plaintiff,

v.                                Case No. 6:16-cv-1011-Orl-37GJK

AETNA LIFE INSURANCE
COMPANY; and MES GROUP, INC.,

        Defendants.

ORDER

This cause is before the Court on consideration of the following matters: (1) Defendants' Motion to Dismiss First Amended Complaint with Supporting Memorandum of Law (Doc. 36), filed December 15, 2016; (2) Plaintiff's Response in Opposition to Defendants' Motion to Dismiss First Amended Complaint (Doc. 37), filed December 28, 2016; (3) Defendants' Motion to Strike Exhibits 1 and 3, and Corresponding References Thereto, In Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. 39), filed January 4, 2017; and (4) U.S. Magistrate Judge Gregory J. Kelly's Report and Recommendation (Doc. 41), filed February 24, 2017.

**I.    BACKGROUND**

Proceeding without benefit of an attorney, *pro se* plaintiff Judson Clay Pankey sues defendants Aetna Life Insurance Company ("**Aetna**") and MES Group, Inc. ("**MES**") under Title III of the American with Disabilities Act ("**ADA**"). (*See* Doc. 35; *see also* Doc. 1.) The Court dismissed the initial Complaint as a shotgun pleading with deficient standing

-1-

allegations (Doc. 34 ("**Dismissal Order**")):

> Plaintiff seeks only injunctive and declaratory relief, yet he provides an entirely conclusory and insufficient allegation that he "will continue to be irreparably injured by the conduct of the Defendants unless this [C]ourt grants the declaratory and injunctive relief which he seeks." Further, Plaintiff's "Prayer for Relief" seeks little more than compliance with non-specific requirements of Title III of the ADA.

(Doc. 34, pp. 4–5.) The Court ordered Plaintiff to replead. (*See id*. at 5.)

Plaintiff then filed an Amended Complaint (Doc. 35), and Defendants filed a joint motion to dismiss with supporting exhibits (Doc. 36 ("**MTD**"); Doc. 36-1). Plaintiff filed a response with supporting exhibits (Doc. 37 ("**Response**"); Doc. 37-1 ("**Response Exhibits**")), and Defendant moved to strike the Response Exhibits (Doc. 39 ("**Strike Motion**")). Plaintiff did not respond to the Strike Motion, which was referred to U.S. Magistrate Judge Gregory J. Kelly, who issued a Report and Recommendation advising that the Strike Motion should be granted (Doc. 41 ("**Report**")). These matters are ripe for adjudication.

## II.   THE REPORT

Because no party objected to the Report and the deadline to do so has now passed, the Court is required to review the Report for clear error. *See* Fed. R. Civ. P. 72(a); *Marcort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). Having done so, the Court finds that the Report is free of error and is due to be accepted, adopted, and made part of this Order. (*See* Doc. 41.) Accordingly, in resolving the MTD, the Court has not considered the Exhibits, which are due to be stricken.

### III.     LEGAL STANDARDS

#### A.     Minimum Pleading Requirements and Standing

Complaints filed in this Court must comply with the minimum pleading requirements set forth in Federal Rule of Civil Procedure 8 by including "short and plain" statements of a claim showing that the plaintiff "is entitled to relief" and "the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a). To state jurisdictional grounds, a plaintiff must allege that he has standing under Article III of the United States Constitution—that is, he has suffered "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340–42 (2006); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012). Where plaintiff's requested relief is an injunction, he also must allege "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *See Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001.)

Failure to comply with the Court's minimum pleading requirements provides grounds for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009); *Shotz*, 256 F.3d 1077. When assessing the sufficiency of a pleading, courts must limit their consideration to the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *see also Laskar v. Peterson*, 771 F.3d 1291, 1295 n.3 (11th Cir. 2014). Courts also must accept all well-pled factual allegations—but not legal conclusions—in the complaint as true. *See Tellabs, Inc.*, 551 U.S. at 322–23.)

After disregarding allegations that "are not entitled to the assumption of truth," the court must determine whether the complaint includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 663, 679 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). As to standing, courts must "not speculate concerning the existence of standing or piece together support for the plaintiff." *See Schotz*, 256 F.3d at 1081. Rather, the Court must dismiss if the plaintiff—who bears the burden of establishing jurisdiction—fails to establish the existence of standing. *See Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1210 (11th Cir. 1992).

    **B.**    **Title III of the ADA**

Title III of the ADA confers a substantive right "to be free from disability discrimination" in the "full and equal enjoyment of the [services, privileges,] facilities, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation." *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013) (quoting 42 U.S.C. § 12182(a)). The ADA also prohibits discrimination "against any individual because such individual made a charge" of disability discrimination under the ADA. *See* 42 U.S.C. § 12203(a).

A person subjected to discrimination in violation of the ADA may institute "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order." *See Access Now, Inc. v. SW Airlines Co.*, 385 F.3d 1224, 1229–30 (11th Cir. 2004); *see also* 42 U.S.C. §§ 2000a-3, 12188(a)(1), 12203(c). Plaintiffs may bring such an action only against the owner or operator of "a place of

public accommodation," who prevents the plaintiff from fully and equally enjoying "a privilege or advantage of [d]efendants' public accommodation."[1] *See Rendon v. Valleycrest Prods., Ltd*, 294 F.3d 1279, 1282–83 (11th Cir. 2002) (setting forth the minimum facts that an ADA plaintiff "must allege"); *see also Morgan v. Christensen*, 582 F. App'x 806, 809 (11th Cir. 2014) (affirming order dismissing ADA claim because the plaintiff did not allege that the defendant "leased, owned, or operated a place of public accommodation").

## IV. THE AMENDED COMPLAINT

The Amended Complaint includes four counts for alleged violations of Title 42, United States Code: (1) section 12182(b)(1)(A)(i) for denying Plaintiff the "service of being evaluated" for and "participating in rehabilitation programs" ("**Service Claim**")); (2) section 12182(b)(2)(A)(iii) for "issuing a directive that no adaptive devices be provided" to Plaintiff (*id*. ¶¶45–47 ("**Directive Claim**")); and (3) section 12203(a) for disclosing Plaintiff's "protected health information" ("**PHI**") in retaliation for Plaintiff's efforts to assert his ADA rights through administrative proceedings ("**Retaliation Claims**"). (*See* Doc. 35, ¶¶45–54.)

In support of these claims, Plaintiff alleges that he is "an individual with a disability" under the ADA because he is a "profoundly hard of hearing/deaf" person

---

[1] Pursuant to the ADA, disability "discrimination" includes: (1) "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability . . . from fully and equally enjoying" a defendants' services (*see* 42 U.S.C. § 12182(b)(2)(A)(i)); and (2) "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" (*see id*. § 12182(b)(2)(A)(iii)).

who "needs the accommodations of auxiliary aids and services, *i.e.*, adaptive devices, to effectively communicate" ("**Disability**"). (*See id.* ¶1.) Through his employer, Plaintiff purchased "a group life and accident and health insurance policy" ("**Policy**"), which is underwritten and administered by Aetna. (*See id.* ¶5.) Due to his Disability, Plaintiff applied to Aetna for benefits under the Policy ("**Claim**"), and in early **July 2012**: (1) Plaintiff and an Aetna employee ("**MCV**") "agreed to meet to evaluate [Plaintiff] for a rehabilitation program" ("**LTD Interview**"); and (2) Plaintiff requested that Aetna provide him "an accommodation of CART, an auxiliary aid and service," for the "proposed" LTD Interview ("**CART Request**").[2] (*See id.* ¶¶9–11; *see also* Doc. 36-1, pp. 8–19 (providing copies of the CART Request and related email string).)

After the CART Request, MCV and a "vocational rehabilitation consultant" allegedly spent four months exchanging "more than two dozen email(s)" with Plaintiff to "arrange CART and the LTD Interview" until **November 2, 2012**, when MCV advised Plaintiff that the LTD Interview would be conducted as a conference call. (*See id.* ¶¶12, 13, 16; *see also* Doc. 36-1, pp. 2–6.) Five days after Plaintiff agreed to the conference call, on **November 9, 2012**, MCV advised him that Aetna would be handling Plaintiff's "claim in-house for the time being and will not be employing CART services at this time." (Doc. 36, ¶¶9, 14, 17, 18; *see also* Doc. 36-1, p. 2.)

---

2 CART is "a machine that provides real-time translation for hearing impaired individuals." (*See* Doc. 24 (denying Plaintiff's request that the Court provide CART to Plaintiff for the case management conference between the parties); *see also* Doc. 31-1, p. 4 (explaining process for "remote CART services").)

According to Plaintiff, "four months after denying him the service of a LTD Interview allegedly because of his disability," MCV wrote the following note in Aetna's internal notes system on March 7, 2013: "This is a very contentious claim with a deaf claimant. There can be no interview." (*See* Doc. 35, ¶19.) Further, Plaintiff alleges that: (1) he "continues to be a customer of [Aetna] and will be a customer for the foreseeable future;" and (2) he "is allegedly being denied" the Evaluation Service "because of his disability." (*See id.* ¶18.)

On **November 13, 2012**, Plaintiff filed his first administrative ADA complaint ("**First ADA Complaint**"), which requested that the Department of Justice ("**DOJ**") "assist Plaintiff in having [Aetna] provide the LTD Interview with [CART]." (*See id.* ¶15.) Plaintiff did not serve Aetna with the First ADA Complaint, and the DOJ "decided to do nothing" other than notify Plaintiff that the First ADA Complaint "did not give sufficient detail of an issue that [the DOJ was] able to address." (*See id.* ¶¶7, 15.)

Plaintiff alleges that Aetna Senior Disability Risk Manager ("**SDRM**") entered a note in the System on **December 19, 2013**, which provides:

> THIS CLAIM WAS STAFFED IN ROUNDTABLE WITH RMD DR. SYNDER AND RON MARTIN, SDCC. AGREED TO REFER TO VOC FOR TSA/LMA BASED ON DX OF SEVERE BILATERIAL SENSORINEURAL HEARING LOSS. *NO ADAPTIVE DEVICES*. CLAIMANT HAS THE ABILITY TO COMMUNICATE EFFECTIVELY THROUGH EMAIL, TEXT, WRITING, AND READING LIPS.
>
> PLEASE CONDUCT A CURRENT TSA/LMA FOR THE ABOVE. ROUNDTABLE RECOMMENDATION – PERHAPS A HOME VISIT IF NEEDED. . . .

> Due to complexity file is referred to vendor Coventry for TSA/LMA.

(*See id*. ¶20 (emphasis added").) Plaintiff alleges that this internal system note constitutes Aetna's Directive to deny him "adaptive devices," which "Aetna's roundtable committee instituted." (*See id*. ¶¶21, 22.) Because Plaintiff "continues to be a customer" of Aetna and will continue to need CART for "interactions" with Aetna, Plaintiff contends that the Directive constitutes ongoing ADA discrimination because it has and will prevent his enjoyment of services "provided to other customers." (*See id*.)

On **February 26, 2014**, Plaintiff filed a "Health Information Privacy Complaint" ("**HIP Complaint**") with the U.S. Department of Health and Human Services ("**HHS**") against Aetna for obtaining PHI from Plaintiff's general practitioner ("**WVMA**") without authorization. (*See id*. ¶¶26, 27.) The next day, Plaintiff filed an amended ADA complaint with the DOJ ("**Second ADA Complaint**"), which requested that the DOJ "open an investigation into [Aetna's] actions." (*See id*. ¶¶7, 23.) Plaintiff alleges that: (1) he provided Aetna with copies of the Second ADA Complaint and the HIP Complaint on **April 3, 2014**; (2) Aetna then retaliated against Plaintiff by disclosing the improperly-obtained WVMA PHI to MES on **May 22, 2014**; and (3) MES also retaliated against Plaintiff by disclosing WVMA PHI to a reviewing physician. (*See id*. ¶¶26–35, 48–50.)

On **July 7, 2015**, the DOJ notified Plaintiff that it would refer the Second ADA Complaint "to its sponsored mediation program" ("**Mediation Program**"), and in **mid-September 2015** the director of the Mediation Program contacted Aetna concerning

mediation of the Second ADA Complaint.[3] (*See id.* ¶¶7, 36, 37.) Approximately one week later, Aetna notified Plaintiff that it had mistakenly sent a compact disc containing Plaintiff's "personal information" ("**CD**") to another Aetna customer ("**Unknown Recipient**").[4] (*See id.* ¶¶38, 39.) Plaintiff alleges that Aetna's disclosure of the CD "was in retaliation" for Plaintiff's participation in the Mediation Program. (*See id.* ¶¶41, 51–53.)

Plaintiff's "Prayer for Relief," requests that the Court require Defendants to "purge Plaintiff's WVMA PHI from their files," and order Aetna to: (1) provide "the service of a LTD Interview" and an affidavit assuring Plaintiff that the Disclosed Information "has been purged, not further shared, and not subject to breach;" and (2) modify its practices by providing auxiliary aids and services . . . to Plaintiff." (*See id.* ¶d; *see also id.* ¶2.) Plaintiff also requests declarations that Defendant violated Title III and an award of his litigation expenses. (*See id.* ¶¶a, e, f.)

V. **Discussion**

A. **Rule 12(b)(1)**

Defendants argue that the Court should dismiss the Amended Complaint

---

[3] The status of the parties' mediation is unclear. Plaintiff suggests that the mediation was ongoing when he filed this action: it "took six months for the mediator to be assigned and the first mediation session to be scheduled . . . [and] the parties were unable to resolve the matter prior to the four year statute of limitations being reached, and thus, the matter was filed with this Court." (*See* Doc. 35, ¶7.)

[4] The CD included the following information ("**Disclosed Information**"): (1) Plaintiff's name, address, birth date, social security number, and employment history; (2) information concerning Plaintiff's salary, pension, social security benefits, the social security benefit information of his dependents, and one defendant's birth date; (3) summaries of background investigations of Plaintiff; and (4) the names of Plaintiff's doctors and "detailed summaries of his medical history." (*See* Doc. 35, ¶39.)

pursuant to Rule 12(b)(1) because Plaintiff again has failed to allege "facts supporting any plausible inference" of future injury." (*See* Doc. 36, pp. 7–10.) Specifically, Defendants contend that: (1) Plaintiff's few allegations concerning standing are too conclusory and speculative to permit a plausible inference that Plaintiff faces a real and immediate threat of *future* discrimination; and (2) Plaintiff has not alleged that the PHI or Disclosed Information has been misused, and Plaintiff's allegation that he is at risk for "future harm" is insufficient as a matter of law. (*See id.*)

As to his Service and Directive Claims, Plaintiff counters that his more tailored request for relief and allegations concerning the Directive and Aetna's ongoing denial of an LTD Interview sufficiently demonstrate standing. (*See* Doc. 37, pp. 2–3.) Plaintiff further contends that he has shown standing for his Retaliation Claims based on his allegations that Defendants' disclosure of the WVMA PHI and Aetna's disclosure of the CD has created a "threat of future harm" that would be redressed by a "purge" of Defendants' files and an affidavit from the Unknown Recipient. (*See id.* at 4–5.)

After construing all inferences from the well-pled facts alleged in the Amended Complaint in favor of Plaintiff—who is proceeding *pro se*—and disregarding the speculative and conclusory allegations,[5] the Court cannot find that Plaintiff has

---

5 The Amended Complaint includes: (1) allegations that Plaintiff "has no plain, adequate or complete remedy at law to redress the wrongs described" in the Amended Complaint (*see id.* ¶35); (2) allegations that Plaintiff "has been and will continue to be irreparably injured by the conduct of the Defendants unless this court grants the declaratory and injunctive relief which he seeks" (*see id.*) and (3) general requests that Defendants be enjoined from future violations of Title III of the ADA and its implementing regulations (*see id.* ¶¶b, c). As noted in the prior Dismissal Order, such conclusory allegations and generalized requests for relief are insufficient. (*See* Doc. 34,

sufficiently demonstrated standing with respect to any of his claims. Notably, the Amended Complaint paints a nebulous picture from cherry-picked facts of Plaintiff's relationship with Aetna, the necessity of continuing communications, and Aetna's alleged failure to conduct the LTD Interview. (*See* Doc. 35, ¶¶9–11, 14, 17–22 (discussed *supra*, pp. 5–7).) The specific incidents Plaintiff complains of occurred years ago, and Plaintiff has not adequately identified a single recent or future event that could be adversely affected by Defendant's allegedly discriminatory conduct. Similarly, Plaintiff's allegation of "future harm" resulting from Defendants' allegedly retaliatory conduct are too conclusory and speculative to establish standing at the pleading stage in this action.[6] *See Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1284–85 (M.D. Fla. 2016) (dismissing claim for injunctive relief because speculative allegations of "future identity theft" did not establish standing); *see also Resnick*, 693 F.3d at 1323, n.1 (noting that many courts have rejected threats of future harm as sufficient for standing in data breach cases). Accordingly, the Amended Complaint is due to be dismissed pursuant to Rule 12(b)(1).

    **B.**    **Rule 12(b)(6)**

Defendants also argue that the Court should dismiss the Amended Complaint pursuant to Rule 12(b)(6) because Plaintiff cannot allege that he was prevented from fully

---

pp. 4–5.)

    6 Plaintiff alleged that Aetna offered him "free credit monitoring" and advised him that the Unknown Recipient returned the CD, which was "destroyed in line with Aetna's privacy and security protocols." (*See* Doc. 35, ¶¶40, 41.) Such allegations concerning corrective and protective actions taken by Defendants after the unauthorized disclosures further undermine Plaintiff's speculative allegation that he is at risk of "future harm."

and equally enjoying a privilege or advantage of a physical *public accommodation* as required under the ADA. (*See* Doc. 36, pp. 10–15 (contending that Plaintiff has not alleged that Aetna "denied him access to their offices or to any physical place of public accommodation"); *see also supra* pp. 4–5 (discussing pertinent law).) Plaintiff counters that the LTD Interview supplies the "physical nexus" between him and a public accommodation—Aetna's insurance offices. (*See* Doc. 37, p. 7.)

For purposes of Title III, a physical "insurance office" is a place of "public accommodation" and the owner or operator of such an office who commits acts of discrimination under the ADA is subject to a civil action if its operations affect commerce. *See* 42 U.S.C. § 12181(7)(F); *see also Rendon*, 294 F.3d at 1282, n.3 (noting that 28 C.F.R. § 36.104 defines "public accommodation" as a "place" or "facility, operated by a private entity, whose operations affect commerce"). Although an ADA Plaintiff need not personally appear at the insurance office, to state a plausible Title III claim, the plaintiff must allege sufficient facts that show a nexus between the "challenged service and the premises of the [insurance office]." *See Rendon*, 294 F.3d at 1284, n.8.

Here, the only allegations in the Amended Complaint concerning any public accommodation are that: (1) Aetna operates insurance offices in Florida ("**Offices**") "that underwrite and administer insurance products;" and (2) such Offices are "public accommodations" under § 12181. (*See id.* ¶5.) These allegations are far too conclusory and attenuated to show any "nexus" between Aetna's Offices and its alleged denial of the LTD Interview and auxiliary services. Accordingly, the Amended Complaint also is due to be dismissed under Rule 12(b)(6).

Because all of Plaintiff's claims are subject to dismissal under Rules 12(b)(1) and 12(b)(6), the MTD is due to be granted and the Amended Complaint is due to be dismissed without prejudice. Although Plaintiff has previously been afforded an opportunity to replead, the Court will provide one additional opportunity given his *pro se* status. If Plaintiff chooses to replead, his pleading must fully comport with the Court's minimum pleading requirements—including requirements under Rule 11(b) that, to the best of his "knowledge, information and belief, formed after an inquiry reasonable under the circumstances:" (1) the amended complaint "is not being presented for any improper purpose;" (2) Plaintiff's claims "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" (3) Plaintiff's "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

## VI.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) U.S. Magistrate Judge Gregory J. Kelly's Report and Recommendation (Doc. 41) is **APPROVED, ADOPTED, AND CONFIRMED**.

(2) Defendants' Motion to Strike Exhibits 1 and 3, and Corresponding References Thereto, In Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. 39) is **GRANTED**.

(3) Defendants' Motion to Dismiss First Amended Complaint with Supporting Memorandum of Law (Doc. 36) is **GRANTED**.

(4)   The First Amended Complaint (Doc. 35) is **DISMISSED WITHOUT PREJUDICE**.

(5)   On or before **April 7, 2017**, Plaintiff may file a Second Amended Complaint.

(6)   Plaintiff is advised that this action will be **CLOSED** without further notice if he fails to file a Second Amended Complaint in the time prescribed by this Order.

**DONE AND ORDERED** in Orlando, Florida, this 23d day of March, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:

Counsel of Record